Eliza Johnson, administratrix of the estate of Drusilla Jones, complainant-respondent,

*v.*

Savings Investment and Trust Company, of East Orange, New Jersey, and Betty Harrigan, defendants-appellants.

[Submitted October term, 1931. Decided May 16th, 1932.]

*Messrs. Howe & Davis (Mr. Edward L. Davis)*, for the defendant-appellant.

*Messrs. Grosso, Brundage & Anderson (Mr. Norman L. Brundage)*, for the complainant-appellee.

The opinion of the court was delivered by

Bodine, J.

The complainant, administratrix of Drusilla Jones, seeks to recover the balance due in a savings account in the name of her intestate in trust for Betty Harrigan. The court of chancery awarded the money to the administratrix, and in this there was no error.

The complainant's proofs showed that on November 26th, 1928, Mrs. Jones withdrew $2,400 of her money from the Orange Savings Bank and opened the account in question in the Savings Investment and Trust Company of East Orange. The pass book evidences a trust for Betty Har-

rigan. Subsequently two withdrawals and one deposit were made. The vouchers, withdrawing the money, were signed in both instances by the trustee. The bank clerks present, when the moneys were withdrawn, stated that Betty Harrigan did not accompany Mrs. Jones, because their custom was to require the person accompanying a customer, who could not sign her name, to witness the mark made upon the withdrawal voucher. Betty Harrigan's signature was not so placed. She, however, said she was present but the determination of the weight of evidence was for the court below.

Betty Harrigan testified that after the account was opened the pass book was delivered to her and she thereafter had continuous possession of it. There was contradictory proof, but she was corroborated by several witnesses who, unfortunately for her, also testified that Mrs. Jones declared that she had opened the account, so that Betty might have the money after her death.

Henry Mayo, the father of Betty Harrigan, testified in part as follows: "Q. She didn't want her to have the money while she was alive, did she? A. Well, no, I guess not. Q. If she got sick, she wanted to use that money herself? A. I guess that is right. Q. And that is why the account was made that way? A. Well, I don't know why the account was made that way. Q. I mean, it was not Mrs. Jones' intention that Betty should have that money until she died? A. Until she died. Q. I mean, she was to have a right to use it, but it was to go to Betty when she died? A. Yes, sir. Q. That was the understanding? A. That was the understanding."

Another witness testified: "She told me that Betty was the only one that cared for her and done for her whenever she was sick, and she told me that she couldn't get no money unlessen Betty go with her to the bank, * * *. She said that she wanted Betty to have everything whenever she deceased. She wanted Betty to have everything."

The money deposited in this trust account was all the property which Mrs. Jones possessed and it would be most improvident for her to deprive herself of the right to use the

same as she might require. She never intended this and none of the credible witnesses called so understood her. That she could by appropriate means, if properly advised, have accomplished her purpose to pass at her death the remainder of her property to the object of her bounty provides no legal basis for judicial action to accomplish her purpose in the absence of a will.

"The requisites to establish a gift *inter vivos* * * * are (1) a donative intent on the part of the donor; (2) an actual delivery of the subject-matter of the gift; at least to the extent practicable or possible considering the nature of the thing given; and (3) a stripping of the donor of all ownership and dominion over the subject-matter of the gift, at least to the extent practicable or possible considering the nature of the thing given. *Swayze* v. *Huntington, 82 N. J. Eq. 127* (at *p. 133*); *affirmed, 83 N. J. Eq. 335.*" *Besson* v. *Stevens, 94 N. J. Eq. 549, 556.* Also *Jones* v. *Westcott, 8 N. J. Mis. R. 312, 314.*

"The elements by which is tested a voluntary declaration of trust as distinguished from a declaration made upon consideration are the same as the tests of a gift. *Nicklas* v. *Parker, 69 N. J. Eq. 743; 61 Atl. Rep. 267; affirmed, 71 N. J. Eq. 777.*" In re *Coyle's Estate, 9 N. J. Mis. R. 158, 159.*

The sole question in dispute depends upon whether the donor had declared an intention to and had stripped herself of all ownership and dominion over the subject-matter of the gift. The proofs indicate that Mrs. Jones retained for her life the right to enjoy the fund and that after her death that which remained was to go to Betty Harrigan.

The opening of the account in the name of Mrs. Jones, as trustee for Betty Harrigan, was, of course, evidence of a trust in Betty's favor. There was further some proof of the delivery of the pass book to the beneficiary. However, the unequivocal declaration of intention by Mrs. Jones was that she had the right to use the fund during her life and whatever was left after her death should go to Betty Harrigan. That such disposition transcends the statute of wills goes without saying. *Stevenson* v. *Earl, 65 N. J. Eq. 721.*

The learned vice-chancellor so found, and his finding, we think, is supported by the great weight of evidence. The decree appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.

*For reversal*—None.