No. 16,427.

URBANCICH *v.* JERSIN ET AL.
(226 P. [2d] 316)

Decided December 4, 1950.   Rehearing denied January 8, 1951.

Mr. C. R. Froman, Mr. Carl M. Perricone, for plaintiff in error.

Mr. L. H. Drath, Mr. Edward A. Jersin, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The parties to this litigation are here in reverse order of their appearance in the trial court, where defendants in error were plaintiffs, and plaintiff in error was defendant. We will herein refer to them as they were designated in the court below.

Plaintiffs are executors of the will of one John Novak, who died September 30, 1948. They seek recovery of $5,069.57 from defendant, which sum was the amount admittedly received by defendant following the death of the said Novak, and which was the balance on deposit in Denver banks to the joint account of Novak and the defendant.

Plaintiffs alleged that Novak was illiterate and without business experience; that he reposed special trust and confidence in defendant and believed the representations made to him by the latter, and further believed that defendant was "in good faith acting solely in the interests of said Novak and the legatees under his last will and testament." Plaintiffs further alleged: "That on or about, to-wit, the 30th day of August, 1946, the defendant, with intent to deceive the said John Novak and to defraud his said legatees, falsely and fraudulently represented to the said John Novak that he should deposit his money in a joint bank account or accounts in the names of the defendant and said Novak

so that upon the death of the said Novak defendant would be able to and would send said money to the nephews and nieces of the said John Novak who then were and now are the legatees under the last will and testament of said John Novak, and that otherwise the government would take half of it for taxes."

Plaintiffs also alleged that in reliance upon the representations of the defendant, Novak opened accounts in two Denver banks in the joint names of defendant and Novak; that thereafter Novak died, and that within a week after his death defendant "withdrew from said account in the American National Bank the sum of $2,657.57, being the amount of said deposits with accumulated interest, except the sum of $5.00; and on or about October 20th, 1948, withdrew from said account in the United States National Bank of Denver the amount of $2,412.00, being the amount of said deposit with accumulated interest, and converted said sums to his own use." It is further alleged: "7. That the plaintiffs have heretofore demanded of the defendant the delivery of said moneys to the plaintiffs as executors of the estate of the said John Novak, deceased, but the defendant has refused to do so."

In his answer, defendant admitted receiving the money, denied any fraudulent representations, and claimed the money as the survivor of the joint tenants, in whose names the accounts stood.

At the close of the evidence offered by plaintiffs defendant moved for dismissal of the action, which motion was denied. Defendant offered no evidence, and thereupon the trial court entered its "Findings and Judgment" which contained, inter alia, the following:

"There is no proof here, in the judgment of the Court, that the original arrangement, whereby the money of John Novak was deposited in a couple of banks in Denver in the joint names of John Novak and Joe Urbancich, was fraudulent. The arrangement which is alleged to have been made, and which the witness testi-

fied was made, was susceptible of a perfectly honest interpretation.

\* \* \*

"This action, however, is not based entirely on allegations of fraud in the inception of the arrangement. There is also commingled in this suit a prayer for money converted by the defendant, belonging to the estate, and on that claim, the Court finds that the plaintiffs are entitled to recover."

The money in question belonged to Novak at the time the joint accounts were created. There is no claim that defendant contributed in any way to the fund. It is undisputed that at the time the joint accounts were created, Novak and defendant expressly agreed that *upon Novak's death* defendant would withdraw the money and send it to Novak's nieces and nephews. These nieces and nephews were the sole beneficiaries named in Novak's will, which was attested prior to the arrangement with defendant. The sole purpose of the transaction resulting in the creation of the joint accounts, was to avoid the probate of the will.

The agreement between Novak and defendant vested no interest whatever in the nieces and nephews of Novak upon creation of the joint accounts. There was no gift inter vivos. The gifts, channeled through the defendant by the agreement, were to take effect *only upon Novak's death*. Novak kept complete and unrestricted control over all the money so long as he lived, and could have withdrawn all of it and made disposition thereof in any manner he desired. Under the agreement, defendant had no right whatever to withdraw any of the money for any purpose during the lifetime of Novak, and upon Novak's death he could only do so for the purpose of transmittal to the nieces and nephews.

Counsel for defendant argue that when the bank deposits were made in the joint names of their client and Novak, upon the death of Novak the money became the property of the survivor notwithstanding the express

agreement to the contrary, which was the whole induce-
ment to the creation of the accounts in the joint names.
They argue that this result follows under section 45,
chapter 18, volume 2, '35 C.S.A., which provides, inter
alia, concerning joint accounts that, " * * * such deposit
shall be deemed to be owned by said persons in joint
tenancy with the right of survivorship; * * * "

■ There is nothing in this statute which prevents
parties from making express contracts with relation to
their several interests in moneys placed on deposit in
their joint names. In the absence of such express agree-
ment the statute would control. To hold otherwise would
be to open wide the door to fraud, and permit a wrong-
doer unjustly to enrich himself by betrayal of a trust
after the death of the person who placed confidence in
him.

■ We are fully satisfied that the transaction from
the beginning was an abortive attempt to make a testa-
mentary disposition of property without compliance with
the statutory law which governs such transactions. It
is fundamental that any testamentary disposition of
property made otherwise than by compliance with the
statute, section 39, chapter 176, '35 C.S.A., cannot be
enforced, and gives rise to no enforceable rights what-
ever. In *Johnson v. Hilliard, Administrator,* 113 Colo.
548, 160 P. (2d) 386, the distinction between a gift inter
vivos and a testamentary disposition of property was
considered. We there said:

"A gift inter vivos, as we understand it, is one in
which the donor parts with all present and future
dominion over the property given. The subject of the
gift must be delivered to the donee, or someone for him,
and the gift must be absolute and irrevocable without
any reference to taking effect at some future period.
                    *      *      *

"The surrender of the dominion or control, in order to
effect a valid gift inter vivos, includes the parting of
possession and relinquishment of all control, both pres-

ent and future, of the property to the extent that it is beyond the power of the donor to recall it. The surrender of control and dominion must be such that if the donor resumes control of the property without the consent of the donee, he will become a trespasser and liable to the donee as such. 38 C.J.S., p. 799, §20; 24 Am. Jur., p. 741, §22.

"The transaction disclosed by the documentary evidence herein, supported by the oral evidence, compels us to classify it either as a gift inter vivos or an abortive attempt at a testamentary disposition of the property. It is difficult, at times, to determine which of these two classifications is proper, and our determination must rest upon the intention of the donor. If the gift is effective in the lifetime of decedent and she has effectually divested herself of any power to recall it, there is no difficulty in determining that it is a gift inter vivos. However, if the gift does not take effect as a completed transfer, either legally or equitably, to the donee during the lifetime of the donor, it is a testamentary disposition and becomes valid only when made according to our statute pertaining to wills."

For the foregoing reasons we conclude the trial court correctly determined that the defendant converted to his own use money belonging to Novak's estate.

The judgment is affirmed.

MR. JUSTICE JACKSON and MR. JUSTICE HOLLAND dissenting.

MR. JUSTICE ALTER not participating.