DELORES WASSON, ADMINISTRATRIX *v.* FRANCES PYRON

5-4196 414 S. W. 2d 391

Opinion delivered May 8, 1967
[Rehearing denied June 5, 1967.]

*Spencer & Spencer* and *Don Gillaspie,* for appellant.

*Shackleford & Shackleford,* for appellee.

GEORGE ROSE SMITH, Justice. Doris E. Beene died intestate on April 3, 1964. Mrs. Beene's niece, the appellee Frances Pyron, was at first the administratrix of the estate. Several of Mrs. Beene's heirs asserted, in a petition filed in the probate court, that Mrs. Pyron had kept for herself a diamond ring and $18,503.93 of in-

surance money that should have been inventoried as assets of the estate. The probate judge, without passing on the merits of the petition, brought the matter to an issue by discharging Mrs. Pyron as administratrix, appointing the appellant as her successor, and suggesting that the appellant bring suit in equity for the recovery of the ring and insurance money.

In the chancery case the court held that the ring was an asset of the estate but that Mrs. Pyron was entitled to the insurance money. An appeal and cross-appeal bring both issues to us for review. (There is also a precautionary appeal from the probate court order, but it is unimportant.)

We turn at once to the controversy over the insurance proceeds, which presents a far-reaching question of the first magnitude—a question which, if resolved in favor of the appellant, might prove to be little short of calamitous for hundreds upon hundreds of our citizens. That question is whether the insurance company's agreement to pay the insurance money to Mrs. Pyron as a contingent beneficiary was void for want of compliance with the Statute of Wills.

The facts are simple. Mrs. Beene was the sole beneficiary of a $19,000 group insurance certificate issued by the Metropolitan Life Insurance Company upon the life of her husband, who died on July 17, 1963. Instead of taking the insurance money in cash Mrs. Beene entered into a contract with the Metropolitan by which it agreed to pay her $108.98 a month for twenty years. If Mrs. Beene died without having received the full amount the funds still held by the company, commuted to present value, would be paid to Frances Pyron, the appellee. In the contract Mrs. Beene reserved the power to change the contingent beneficiary at any time and to withdraw the funds herself if she chose to do so. Mrs. Pyron was still the contingent beneficiary when her aunt died a few months later. The appellant now contends that the contract was a testamentary disposition that should fail for

non-compliance with the Statute of Wills. The argument is that even though Beene himself might have named a contingent beneficiary of the policy, his widow could not do so *by contract* when the money became payable to her alone.

We are aware, as a matter of common knowledge, that agreements like this one are widely used in the life insurance business. There is certainly no public policy against such contracts, upon which countless persons are dependent. In the few cases in which the validity of similar contracts has been considered, the weight of authority sustains the arrangement, either on the basis of a statute or on the theory of a third-party-beneficiary contract. Appleman, Insurance Law & Practice, § 889 (1966 and Supp. 1967); *Mutual Ben. Life Ins. Co.* v. *Ellis,* 125 F. 2d 127, 138 A. L. R. 1478 (2d Cir. 1942), *cert. den.* 316 U. S. 665 (1942); *Hall* v. *Mutual Life Ins. Co. of N. Y.,* 122 N. Y. S. 2d 239, 282 App. Div. 203 (1953), *aff'd* 306 N. Y. 909, 119 N. E. 2d 598 (1954); *Toulouse* v. *N. Y. Life Ins. Co.,* 40 Wash. 2d 538, 245 P. 2d 205 (1952).

In Arkansas we need not rely upon common-law authorities, for the point is explicitly covered by our Insurance Code. Section 334 of the Code reads in part: "Any life insurer shall have the power to hold under agreement the proceeds of any policy issued by it, upon such terms and restrictions as to revocation by the policyholder and control by beneficiaries, and with such exemptions from the claims of creditors of beneficiaries other than the policyholder as set forth in the policy or as agreed to in writing by the insurer and the policyholder. Upon maturity of a policy by death in the event the policyholder has made no such agreement, the insurer shall have the power to hold the proceeds of the policy under an agreement with the beneficiaries." Ark. Stat. Ann. § 66-3325 (Repl. 1966).

It will be noted that the Code is liberal in allowing the insurer, by agreement with the policyholder him-

self, to hold the proceeds "upon such terms and re-
strictions as to revocation by the policyholder and con-
trol by beneficiaries" as may be agreed upon. There is
no reason to suppose that the draftsmen of the Code—
a comprehensive statute evidencing the greatest care in
its preparation—meant to be less liberal with respect
to subsequent agreements made between the insurer and
the beneficiary. Quite the contrary, unless the second
quoted sentence is so construed it is practically mean-
ingless and practically useless, for surely statutory au-
thority was not deemed to be necessary to enable an
insurer and a beneficiary to make a simple agreement by
which the company would retain the proceeds of a policy
as an investment by the beneficiary. Thus it is an in-
escapable conclusion—and an altogether desirable one—
that the legislature intended to validate just such agree-
ments as the one now before us. Otherwise the statutory
language is pointless.

With respect to the diamond ring Mrs. Pyron, labor-
ing under the handicap of the Dead Man's Statute, was
unable to adduce much proof that it had been delivered
to her as a gift during her aunt's lifetime. On this
branch of the case it cannot be said that the trial court's
decision is against the weight of the evidence.

Affirmed on direct and cross appeal.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I would re-
verse the lower court on that phase of the case having
to do with the insurance proceeds.

The conclusion that this is an attempted testamen-
tary disposition of the proceeds of life insurance on the
life of an insured by his beneficiary seems inescapable
to me. Doris E. Beene was entitled to this money at the
time of her husband's death. The fact that there were
optional modes of settlement did not change the fact
that it was she, not her designee, who was entitled to

the entire proceeds. Even under the contract she entered into with the insurance company, she was entitled to withdraw the balance on hand at any time at her absolute election. Even though she designated appellee to receive whatever balance had not been paid to her under the installment settlement, she reserved the unrestricted right to change that designation at any time.

Clearly we would have to find that this was a gift in order to sustain the position of appellee, except for Ark. Stat. Ann. § 66-3325 (Repl. 1966) [which I will subsequently discuss]. This cannot be done because there must be both a delivery and the surrender of possession, dominion and control to validate any gift, either inter vivos or causa mortis. *Marshall Bank* v. *Turney,* 105 Ark. 116, 150 S. W. 693; *Fancher* v. *Kenner,* 110 Ark. 117, 161 S. W. 166; *Umberger* v. *Westmoreland,* 218 Ark. 632, 238 S. W. 2d 495; *Smith* v. *Clark,* 219 Ark. 751, 244 S. W. 2d 776. Obviously the agreement is not in compliance with our statute of wills, not being in the handwriting of the testator as required by Ark. Stat. Ann. § 60-404 (Supp. 1965) or executed in the presence of witnesses as required by Ark. Stat. Ann. § 60-403. It goes without saying that it was contrary to the statute on descent and distribution.

There is *no* evidence that Carter R. Beene designated any contingent beneficiary or authorized his beneficiary to do so.

It seems to me that not only a donee or legatee but any third-party-donee beneficiary would be eliminated by the holding in *Ragan* v. *Hill* 72 Ark. 307, 80 S. W. 150, from which I quote:

"*** W. M. Rees was an old man, being 78 years of age; was feeble; afflicted with some disease; did not expect to live long; had $1,000; offered to and did loan it to John C. Hill & Son; and they executed to him therefor the following instrument of writing:

'Clarksville, Ark., July 14th, 1899. Received from W. M. Rees one thousand dollars with interest at 4 per cent. It is agreed that in case of the death of W. M. Rees that B. C. Rees is to take charge of this money [Signed] John C. Hill & Son.' At the time he loaned the money he stated that it was 'to go to B. C. Rees at his death.' He was a good friend of B. C. Rees. He died on the 18th of August, 1899. John C. Hill & Son advanced $191.85 to pay his funeral expenses. Was the $1,000 a gift to B. C. Rees?

\* \* \*

In every case a delivery is necessary to constitute A gift. In this case W. M. Rees loaned the money to John C. Hill & Son. He never parted with dominion over it in his lifetime. It was not delivered to B. C. Rees, or to any one for him. In the language of witness John C. Hill, 'it was to go' to B. C. Rees at the death of W. M. Rees. The directions of the latter (W. M. Rees) in this respect were testamentary in character, and were not effective, because not made and proved as a will.''

This decision should certainly be controlling in Arkansas over any authorities from other states, in the absence of any statutory law to control. The majority claim to find this in Ark. Stat. Ann. § 66-3325 (Repl. 1966), a part of the Insurance Code. The section, except for the last sentence, is quoted in the majority opinion. The first sentence cannot have any application because there is no evidence of any agreement of the insured with the insurer which could be applicable here. The necessary statutory law, then, to permit avoidance of our rules governing gifts and wills must be found in the second sentence, which the majority purports to do, by reasoning I am unable to follow, and which seems illusionary to me. That section simply says that the insurer shall have the power to *hold* the proceeds of the policy under an agreement with the beneficiaries. I have

been unable to find any definition of the word *hold* that would even remotely indicate such a construction as given by the majority. In its context in the statute *hold* means: "To retain in one's keeping, to maintain possession of, or authority over; not to give up or relinquish." Webster's New International Dictionary, Second Edition. "To keep; to retain; to maintain possession of or authority over." Black's Law Dictionary.

The statute doubtless would permit the beneficiary to make an agreement by which all or a part of the proceeds would belong to or be contemporaneously paid to a third party or parties, perhaps in succession— a completed gift. It does contain language which in literal terms, might permit an insurance company to pay the balance to someone else as do our statutes pertaining to bank accounts (Ark. Stat. Ann. § 67-552) and savings and loan accounts (§ 67-1838). Even if this sentence did permit an insurance company to pay on death to another with impunity, still the statute does not purport to vest title in the payee on death, as does § 67-1838 (5) (a) in the case of savings and loan association accounts. Construction of the statute, as is suggested above, to permit such payments by the insurance company would make the second sentence of the section in question very meaningful. It is to be noted that no one has sought recovery from the insurance company here.

But, says the majority, there is no reason to suppose that the draftsmen of the Code meant to be less liberal with respect to subsequent agreements between the insurer and beneficiary than they were with agreements between insurer and insured. If they did not, why didn't they say so? They say that the insurer may hold the proceeds "under *on* agreement with the beneficiary" not "under *such an* agreement with the beneficiary." [Emphasis mine] If they had meant to use the latter language, even that would not have accomplished the result reached by the majority because there could be no terms and restrictions "as to revocation by the policy-holder and control by beneficiaries, and with such

exemptions from claims of creditors of beneficiaries other than the policy-holder * * *''. I am unable to read into the statute language which does not appear there, as is necessary to reach the result attained in the majority opinion.

The proper rule of statutory construction applicable here was stated very early by this court in *Reynolds* v. *Holland,* 35 Ark. 56, as follows:

> "The rule to be applied in this view, is: First— that the intention is to be sought in the whole of the act taken together, and in other acts in *pari materia.* If the language be plain, unambiguous, and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the courts can not give it a different meaning to subserve a public policy, or to maintain its constitutional validity. The question for the courts is not what would be wise, politic and just, but what did the legislature *really mean to direct.* This narrow circle embraces and circumscribes the whole ambit of the court, although within that it may move freely in catching the intention. It may disregard the literal meaning of words, when it is obvious from the act itself that the use of the word has been a clerical error, or that the legislature intended it in a sense different from its common meaning."

This case was cited with approval and quotation from the opinion in *Snowden* v. *Thompson,* 106 Ark. 517, 153 S. W. 823.

In order to enable the court to insert words in a statute, or read into it different words from those found in it, the intent thus to have it read must be plainly deducible from other parts of the statute. *Graves* v. *Burns,* 194 Ark. 177, 106 S. W. 2d 602.

I have been unable to find anything in the Insurance Code from which it may be deduced that the legislature

intended any such construction as the majority have given it.

I contend that the section of the Act in question is plain and unambiguous and that there are no other sections of the Act which justify the construction given by the majority. I do think it is controlled by other Acts in pari materia—the laws of descent and distribution and the statute of wills. I agree that there is nothing so sacrosanct about these statutes as to exempt them from repeal or amendment, even by implication, but in order to bring this result the conflict must be irreconcilable—which is not the case.

In construing an Act, all statutes on the subject will be construed together. *Doles* v. *Hilton*, 48 Ark. 305, 3 S. W. 193; *Graves* v. *Burns*, 194 Ark. 177, 106 S. W. 2d 602. This court said in *Boone County Board of Education* v. *Taylor*, 185 Ark. 869, 50 S. W. 2d 241:

> "* * * a statute is not to be construed as though it stood alone on any particular subject. It is well settled that repeals by implication are not favored; and, in construing any statute, the court should place it beside other statutes relevant to the subject and give it a meaning and effect derived from the combined whole."

A statute should be construed with relation to other statutes so that all will stand. *Davidson* v. *Rhea*, 221 Ark. 885, 256 S. W. 2d 744. As this court, speaking through the late Justice Minor Millwee, said in *Faver* v. *Cleveland Circuit Court*, 216 Ark. 792, 227 S. W. 2d 453:

> "* * * It is also well settled that repeals by implication are not favored and that two statutes should be construed so as to give effect to both. if possible."

The statute in question here can be construed, as I have suggested, so that it does not conflict with either the statutes of descent and distribution or the statute of

wills, and all should remain in full force and effect. The majority opinion does not rely upon but cites a textbook and authorities from other states as the weight of authority sustaining such contracts. A brief examination of them is in order, as I suggest that they contribute little, if any, weight in such a case as we have before us.

Statements from textbooks, of course, are no better than their supporting authorities. Appleman, Insurance Law and Practice, § 889, contains the following statements:

"* * * A settlement agreement may, therefore, name a contingent beneficiary without violating the statute of wills."

"Thus a contract between the insurer and beneficiary under which the insurer is to retain the proceeds, pay the interest to the beneficiary during her life and the principal to others on her death is valid." [Supp. 1967]

*Hall* v. *Mutual Life Ins. Co. of New York,* 122 N. Y. S. 2d 239, 282 App. Div. 203, affirmed 119 N. E. 2d 598, 306 N. Y. 909, is cited as authority for the first statement. *Mutual Ben. Life Ins. Co.* v. *Ellis,* C. C. A. N. Y. 1942, 125 F. 2d 127, 138 A. L. R. 1478, cert. denied, 62 S. Ct. 945, 316 U. S. 665, 86 L. Ed. 1741 and *Vant* v. *Mutual Ben. Life Ins. Co.,* 262 F. 2d 803, cert. denied, 79 S. Ct., 1139, 359 U. S. 1002, 3 L. Ed. 2d 1030, rehearing denied, 79 S. Ct. 1432, 360 U. S. 923, 3 L. Ed. 2d 1538 are cited for the second.

The *Hall* case is not good authority for there the payee on death was named *irrevocably.* The court stated:

"* * * There was no reservation of the right to change the supplementary beneficiary."

While the beneficiary of the policy had the right thereunder to withdraw the principal, she never did, receiving only the interest. The court there stated very frankly

that it was making a policy decision. In doing so, however, it referred to certain statutes. One of these was an earlier statute of 1906 [L. 1906, Ch. 326. § 101] providing for optional modes of settlement in life insurance policies and specifying that a policy beneficiary might stipulate for gift over on his death. A statute in effect at the time the case arose provided that when the proceeds of a life insurance policy are left with the company under a trust or other agreement, the benefits thereafter accruing should not be transferrable, nor subject *to commutation* or incumbrance. So, in that case there was neither right to commutation or revocation, as was the case here. The court then stated that the Legislature, after a contrary decision in the lower court, had made clear that the supplementary contract, with gift over in the event of death, required no protection from statutes regulating execution of testamentary dispositions. This was done upon the recommendation of the Law Revision Commission. A section of the Act and the note of the Commission, said the court, made it clear that, in so doing, there was no purpose to change the law.

In the *Ellis* case the United States Court of Appeals for the Second Circuit disagreed with a previous New York decision, virtually identical with *Ragan* v. *Hill*, 72 Ark. 307, 80 S. W. 150, and decided the case on what it took to be Coloradi law. It emphasized that the rights of the payees-on-death there could not be terminated by the policy beneficiary without three months notice in writing to the company, in which requirement they found adequate consideration for a contract. The court then answered the argument that the agreement violated the statute of wills by saying that this consideration made the rights of these payees a contractual obligation and not an interest in the property of the decedent. In applying Colorado law, the court relied on certain cases rendered of doubtful value because of later Colorado decisions. It is noteworthy that Appleman did not cite this case as authority for the first proposition quoted above.

The *Vant* case is proper authority for the second statement but relates purely and simply to an agreement between insured and insurer for payment of policy proceeds to his widow and son, who were trying to obtain immediate, rather than deferred payment.

The only other case cited by the majority as contributing to the weight of authority is *Toulouse* v. *New York Life Ins. Co.*, 40 Wash. 2d 538, 245 P. 2d 205. Its value is considerably diluted by reason of the fact that one judge wrote the majority opinion, two judges concurred, two others concurred specially and four dissented. In that case, Sherlock, the insured, not the beneficiary, exercised an optional mode of settlement on an endowment policy. The payees-on-death were the beneficiaries of the policy. The majority opinion states that it proceeds on the assumption that, in making a supplementary contract, the insured proceeded under a right given him by the policy. The majority opinion contains the following statements clearly distinguishing that case from this:

> "* * * In the present case, the rights of the four nieces and the nephew in the supplementary insurance contract are derived from the original insurance policy through the exercise of Option 1.

> * ᴛ *

> Mr. Sherlock might have defeated their rights by withdrawing all the money, but he had no right under the agreement to substitute someone else in their stead as the third-party donee-beneficiary;".

The majority quoted a section of the Washington Insurance Code identical with Ark. Stat. Ann. § 66-3325, except that the second sentence does not include the words "by death" following the words "upon maturity of a policy." I submit that the logic of the dissenting opinion is much sounder than that of the majority.

Actually the opinion of the majority here is based upon a policy determination. I do not profess to know, as they do, that a contrary holding would be calamitous to hundreds upon hundreds of our citizens. I would rather doubt that there are nearly so many of these contracts in existence and the absolute power of revocation could be utilized to correct any that do exist. I suggest that appropriate trust agreements might well accomplish all the purposes one might seek to accomplish by this form of agreement. We may rest assured that insurance companies will be duly alert to any decision we render here. But even if the assumption of the majority were so, it is not for us but for the General Assembly to make such policy determinations. We should not sacrifice our own rules of statutory construction and our statutes of descent and distribution and statutes of wills on the altar of. expediency.

While the record here does not disclose whether there are creditors of this estate, I can well imagine that the device here furnished will be utilized to avoid application of assets such as these to payment of a decedent's just debts in some instances.

I would reverse the lower court on this part of the decree and judgment.