ALBERT A. HALL, Plaintiff, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant, and CEBRA Q. GRAVES et al., as Executors of Barbara C. Graves, Deceased, Impleaded Defendants.

Supreme Court, Special Term, New York County, January 7, 1952.

*John W. Burke, Jr.,* and *Burton H. Brody* for impleaded defendants.

*Arthur M. Moritz, Harry S. Bodin* and *Cornelius P. Cotter* for plaintiff.

*Haughton Bell, John G. Kelly* and *Carl F. Hollander* for Mutual Life Insurance Company of New York, *amicus curiæ.*

EDER, J.  The Mutual Life Insurance Company of New York, on May 15, 1925, issued its policy of ordinary life insurance to Arthur Corlies, who named his daughter Barbara Corlies, as second beneficiary.  He died on June 15, 1941; at the time of his death the policy was payable to her.  She is now deceased. The proceeds of the policy amounted to $7,029.  She had married the plaintiff, Albert A. Hall, and was known as Barbara Corlies Hall.  She divorced him and remarried and was known at the time of her death as Barbara Corlies Graves.  She left a last will and testament naming the impleaded defendants as her executors and they have duly qualified and are acting as such.

Plaintiff claims to be entitled to the proceeds of the policy by virtue of a supplementary contract issued by the company to said Barbara Corlies Hall, in accordance with an election of settlement made by her under said policy and under the terms of which supplementary contract he claims he is entitled to the proceeds of the policy.

The impleaded defendants claim the proceeds contending that the said supplementary contract as it directs payment of the proceeds of the policy to plaintiff, is, in legal effect, an attempted testamentary disposition by said Barbara Corlies Hall, of her said property, in violation of the Statute of Wills, is void, and that they are entitled to said proceeds as the executors of her estate.

The company appears here as *amicus curiæ,* it being its statement to the court that the matter is one of great interest to both the insurance industry and the insuring public.

Upon the death of the insured, Barbara was entitled, under the terms of the policy of insurance, to immediate payment in a lump sum of the proceeds of $7,029.

The policy, as a contract of insurance, was at an end. An opposite view is taken by plaintiff and by the company, as will more fully appear, post. It is a feature of cardinal importance and effect.

The policy contains a provision entitled " Modes of Settlement ", which is a form of arrangement between the beneficiary or payee and the company, which in no way gives insurance to the beneficiary or payee but relates to a disposition of the proceeds of the policy.

" Modes of Settlement " is a plan under which the proceeds of the policy instead of their being paid by the company in one sum to the person entitled thereto, referred to as the payee, may be left with the company for disposition under any one of three alternative modes of settlement, at the option and election of the payee. The modes are indicated as (1), (2), (3).

The company supplies a printed form of notice of election to be signed by the payee, called " Request for Optional Mode of Settlement " and when it is signed by the payee it is filed with the company. The election is thereafter evidenced by the issuance to the payee of what is termed a " Supplementary Contract." It is not a life insurance policy or a contract of insurance in any form. Though it resembles in appearance and form a life insurance policy, it is, in fact, not one and it insures no one; it is actually, an agreement on the part of the company to

carry out the desire of the payee as to the proceeds of the policy in accordance with the election of the mode of settlement chosen.

Though styled "Supplementary Contract" it is, in truth, an independent contract between the payee and the company, in no way pertaining to the issuance of life insurance.

Under the "Modes of Settlement" provision the payee is given the right to designate a contingent payee to receive the amount of the proceeds payable on the death of the payee, as it is therein provided that unless otherwise specified in the election such proceeds will be paid to the payee's executors or administrators. The payee is also given the right, if so directed in the election, to surrender the supplementary contract and receive the proceeds held thereunder.

Barbara Corlies Hall, beneficiary-payee, instead of requiring the company to immediately pay to her said sum of $7,029, the proceeds of the policy, elected to avail herself of mode (1) of the modes of settlement, whereby she permitted the proceeds of the policy to remain with the company; she was to receive, as primary payee, interest on the net sum at 3% per annum, during her lifetime, in quarter-annual installments.

In said request and election she also directed that at her death, the proceeds, if any, then held by the company, were to be paid to plaintiff, her husband; that she would have no right to add or change contingent payees, and that she, as primary payee, was to have the right at any time to surrender the supplementary contract in its entirety for its cash value or to make partial withdrawals of not less than $250.

In her notice of election, after electing to avail herself of mode of settlement (1), she directed as follows: "I hereby further elect that at my (the payee's) death the then surrender value, if any, of the supplementary contract shall be payable in a single sum to the contingent payee as set forth in paragraph No. 3 below. If the contingent payee, or the last survivor of the contingent payees named below shall not be living at my (the payee's) death, such surrender value shall be payable in a single sum to the executors or administrators of the payee.

"1. * * *

"2. * * *

"3. To the payee's (relationship) husband (name) Albert Allen Hall, if living at the death of the payee, if not then living to payee's (relationship) executor or (name) administrator."

Pursuant to the afore-mentioned election the company issued to her its "Supplementary" contract, naming her as primary

payee, and the plaintiff as the contingent payee to take upon her death.

The supplementary contract states that the company in accordance with the said election is obligated under the settlement to pay her, as the payee, interest payments quarterly, to continue during her life, and it further provides: " If the payee shall die during the continuance of said Mode of Settlement (1), such settlement shall terminate at the death of the payee and the then principal sum shall be payable in a single sum to Albert A. Hall, husband of the payee, or if said husband shall not be then living, to the executors or administrators of the payee."

The impleaded defendants, as executors of the estate of the decedent-payee, contend that plaintiff, as contingent payee under the supplementary contract, is not entitled to the proceeds payable thereunder.

In urging this claim the executors maintain that the styled " Supplementary Contract " at issue is not a supplementary contract of *insurance*; in sum, that it involves a *new* contract with the insurance company which is *not* a contract of *insurance;* that stripped of its insurance features, the instant case is analogous to a situation where A deposits moneys in a bank and directs the bank to pay the fund to B upon his death, and that this constitutes an attempt at a testamentary disposition of the fund which is invalid under the Statute of Wills, section 21 of the Decedent Estate Law.

It is the pivotal feature.

Plaintiff and the company contend that the disposition here elected under the supplementary contract between the company and the decedent-beneficiary was a proper exercise of a contractual right under an insurance policy.

In this connection, it is argued that the fundamental error underlying the attack by the executors on this transaction is the assumption that the designation by the decedent-payee was an isolated act to be viewed separate and independent of the insurance relationship.

By way of answer it is submitted by them that such designation by the decedent-payee was an integral and inseparable part of an insurance transaction which began with the original issuance of the policy in 1925 and will culminate with the final and beneficial payment of its proceeds under the terms of the supplemental contract.

It is contended in support of this that the death of the insured did not terminate the insurance contract; that that occurrence merely operated to change the obligation of the company from

one dependent on the happening of the contingency of death to one requiring the company to make payment in such manner as might be directed.

The view has been expressed, *supra,* to the converse, viz., that the policy, as a contract of *insurance,* terminated with the death of the insured; all that remained was the obligation of the company to pay the proceeds of the policy.

With no insurance any longer in force, a contract which related to a further disposition by the beneficiary-payee of the *proceeds* of the terminated contract was a *new* contract pertaining thereto and not one involving the issuance of any *insurance.* Merely denominating it a contract of *insurance* does not make it such when in fact it is not; and terming a contract as " supplementary " thereto is meaningless when in fact there is no existing contract of *insurance* which it can supplement.

Moreover, it is to be noted that decedent-payee did not elect the option as contained and prescribed in the policy in mode of settlement (1), but in fact elected *quarterly* interest payments rather than payable " at the *end* of each year ", as prescribed in the policy. It was not an acceptance by her of the express terms of the option and for this reason also, the so-called supplementary contract cannot be regarded as a supplementary contract of insurance, since a supplemental contract of insurance can result only from acceptance of the express terms of a particular option (*Gram* v. *Mutual Life Ins. Co.,* 300 N. Y. 375; *Mutual Benefit Life Ins. Co.* v. *Ellis,* 125 F. 2d 127 [C. A. 2d.], certiorari denied 316 U. S. 665).

By the company's acceptance of decedent's counter proposal for quarterly interest payments instead of annual payments, a *new* contract was created and the supplementary contract was not a continuing contract of insurance, as the plaintiff and the company contend.

As hitherto mentioned, the supplementary contract does not pertain to any insurance; it relates exclusively to an investment by the payee of the proceeds of the terminated policy in leaving the proceeds on deposit with the company to draw interest at 3% per annum. The transaction is akin to a deposit in a savings bank for a like purpose, i.e., to draw interest. The insurance company is, in fact, engaged to that extent in the same business as any bank which pays interest on deposits, though, perhaps, not technically in law in the banking business.

The contention of the executors that the afore-mentioned provision in the supplementary contract, quoted *supra,* is an

invalid testamentary disposition and is violative of section 21 of the Decedent Estate Law, seems well founded.

The company refers to subdivision 1 of section 46 and paragraph (h) of subdivision 1 of section 155 of the Insurance Law and section 15 of the Personal Property Law as indicating that this type of insurance disposition has received legislative recognition or sanction and that subdivision 1 of section 46 of the Insurance Law in effect exempts " optional modes of settlement of proceeds ", and as indicating that optional modes of settlement are regarded as a proper part of a life insurance contract, and hence should not be regarded as in violation of the Statute of Wills.

This is viewed as unpersuasive. Nothing in these enactments justifies such a claim. Rather the contrary view is to be taken as indicated by the failure at the last session of the Legislature to procure the enactment of legislation, recommended by the Law Revision Commission (1951 Report of N. Y. Law Revision Commission, N. Y. Legis. Doc., 1951, No. 65 [M]), by the introduction of Senate Int. Bills Nos. 123 and 124 and Assembly Int. Bills Nos. 154 and 157, which were designed to amend the Decedent Estate Law to remove a payment such as the instant one from the category of a testamentary disposition. The bills, however, were not enacted into law.

In the instant case the decedent-payee could have surrendered the supplementary contract to the company and have withdrawn the fund at any time during her lifetime. The plaintiff's right, at best, arose only on her death; he had no present interest; nothing was transferred to him.

It is clear that the decedent-payee never intended to divest herself of all rights and control over the fund until her death; at her death and only then was plaintiff to receive anything. The " supplementary " contract, therefore, constitutes an attempted testamentary disposition without compliance with section 21 of the Decedent Estate Law, which specifically prescribes the requirements for a valid testamentary disposition. Compliance with the statute is imperative; failure of compliance is fatal (*Matter of Andrews,* 162 N. Y. 1).

It is also argued in support of plaintiff's right of action and recovery that assuming, arguendo, the supplementary contract is not a contract of insurance, it nonetheless is valid as a socially and economically established institutional arrangement.

The argument is unconvincing. Such an arrangement cannot serve as a *modus operandi* to circumvent, evade or defeat the

requirements of the Statute of Wills, which is a legislative declaration of its public policy.

There appears to be a tacit admission by the company that there is no legislative or judicial recognition, in this State, of the validity of such optional mode of settlement or exempting it from the category of testamentary disposition, for in the affidavit of the assistant general counsel of the company he states that the insurance company, *by mutual agreement with the beneficiary,* will frequently, as in the case at bar, "enhance the social usefulness" of this method of payment of life insurance proceeds: "by providing the greater flexibility and adaptability to the beneficiary's financial needs which result from permitting interest to become payable in quarterly installments and partial withdrawals of principal (rather than insisting on the original limitations of annual payments and complete surrender)."

This appears, also, in the affidavit of the company's vice president and chief actuary, where he states: "If the contention of the impleaded defendants is to be accepted, this type of customary and universally accepted method of payment of life insurance proceeds would be gravely impaired in value and utility and the dispositive intent of thousands of persons defeated. Serious loss in the flexibility, economic advantages and social utility of such insurance arrangements would be the consequence. Moreover, real hardship to beneficiaries from the loss of the Federal income tax exemption now applicable to certain types of income settlements might well follow from the adoption of any view that agreements of the type involved in this case are not valid contracts for the disposition of insurance proceeds."

This is matter for legislative concern. If it was the legislative intent to permit new contracts to be made disposing of insurance proceeds without compliance with the terms of the Statute of Wills, the fair assumption is that the Legislature would have enacted legislation to that effect. Yet the Legislature manifested its refusal to enact into law the recommendations of the Law Revision Commission, above alluded to.

The function of the court is to construe and interpret the law as enacted and to apply the same. It is not the function of the court to correct seeming injustices which it feels flows from lack of adequate legislation. Speaking of the judicial function, the Court of Appeals, in *Martin* v. *Curran* (303 N. Y. 276, 282) stated the following: " But, anomalous or not, such is the law,

and this court does not revise statutes, in an effort to eliminate seeming injustices, or to bring the law into accord with modern fact. Whatever reasons be pressed on us for such changes, the power to change is not ours. It is for the Legislature to decide whether or not to overhaul these settled rules, after hearing both sides, and after considering the interests of the general public as well as those of the innumerable members of these associations.''

As to the view of the company's vice president that a ruling upholding the contentions of the executors will gravely impair in value and utility this method of payment of life insurance proceeds and the dispositive intent of thousands of persons will be defeated, it is unimpressive. All that such persons will be required to do is to make a testamentary disposition in compliance with section 21 of the Decedent Estate Law, instead of in the manner now incorporated in the supplementary contract, in violation of the said enactment. This seems a simple solution.

After due consideration and reflection, the court is of the ultimate conclusion that the assailed provision as to testamentary disposition, contained in the supplementary contract, is invalid and void and is violative of section 21 of the Decedent Estate Law. The plaintiff, therefore, is not entitled to the proceeds of the supplementary contract or to any part thereof, and, conversely, the executors are entitled thereto.

Accordingly, the motion of the executors for judgment dismissing the supplemental complaint and for judgment on their counterclaim is granted, and plaintiff's cross motions for judgment on the pleadings or for summary judgment in his favor are denied.

Settle order.