Albert A. Hall, Appellant, *v.* Mutual Life Insurance Company of New York, Defendant, and Cebra Q. Graves et al., as Executors of Barbara C. Graves, Deceased, Impleaded Respondents.

First Department, June 9, 1953.

*Arthur M. Moritz* of counsel (*Cornelius P. Cotter* and *Harry Sabbath Bodin* with him on the brief; *Arthur M. Moritz,* attorney), for appellant.

*John W. Burke, Jr.,* of counsel (*Burton H. Brody* with him on the brief; *Davies, Hardy, Schenck & Soons,* attorneys), for impleaded respondents.

*James D. Ewing* of counsel (*Eugene Z. DuBose* with him on the brief; *Alexander & Green,* attorneys), for Life Insurance Association of America, *amicus curiæ.*

Breitel, J. Plaintiff appeals from a summary judgment and order dismissing his supplemental complaint. He is the former husband of a beneficiary named in a life insurance policy. The policy beneficiary, upon the death of the insured, her father, had selected an optional mode of settlement of the policy proceeds. In selecting the option the former wife had named plain-

tiff as her irrevocable beneficiary in the supplementary contract, to receive, upon her death, the unpaid principal. Named as defendants are the insurance company and the executors of the estate of the deceased former wife.

Special Term, in dismissing the complaint, held that the supplementary contract issued in connection with the exercise of the option was an independent and new contract between the policy beneficiary and the insurance company (201 Misc. 203). It further held that the supplementary contract was not one of insurance, nor an extension or part of the original contract or policy of insurance. As a new and independent contract, the court said, its provision for payment over of any unpaid balance of principal on the death of the policy beneficiary, was an invalid testamentary disposition for failure to comply with the requirements of the Statute of Wills (Decedent Estate Law, § 21). Should the designation of the former husband as supplementary beneficiary be invalid, the former wife's estate would be entitled to the proceeds.

We cannot agree with the learned Special Term.

The deceased wife, on the death of her father, the insured, had selected a common mode of settlement, namely, to leave the principal of the fund with the insurance company, and to receive interest thereon at the rate of 3% per annum. This was one of the options specified in the policy. According to the terms of the policy it could have been selected by the insured during his lifetime or, upon his death, by the beneficiary entitled to the proceeds of the policy. The option provided that upon the death of the policy beneficiary, the principal was to be payable to the supplementary beneficiary named. The supplementary beneficiary named was the then husband of the policy beneficiary. There was no reservation of the right to change the supplementary beneficiary. It should be noted, however, that the holder of the supplementary contract, as issued by the insurance company, could at any time during her lifetime withdraw all or any part of the principal sum. She in fact withdrew none of it. In applying for the supplementary contract she had arranged that the interest payments should be made quarterly instead of annually as provided in the policy for this particular mode of settlement. The right to withdraw the principal in whole or in part was also included, whereas the policy made no reference to partial withdrawals. These variances from the provisions of the policy, the wife's estate urges as an additional ground, constitute the supplementary contract a new

and independent contract, rather than an extension or part of the main insurance policy.

The insured under the policy died June 15, 1941. His daughter, plaintiff's former wife, selected the optional mode of settlement on July 19, 1941. It was then that plaintiff was designated beneficiary in the supplementary contract that was to be issued. On March 29, 1950, the husband and wife executed a separation agreement. They were thereafter divorced. On August 13, 1950, the former wife of plaintiff died, leaving a will, under which the impleaded defendants are executors. In the interim she had remarried — indeed, to one of those whom she named as executor.

The former husband urges that the supplementary contract, despite variance as to the method of payment of interest or right to withdraw principal, is an extension of the policy, issued on the life of his former wife's father, and that, therefore, it is not a testamentary disposition. It is argued that there is no specific fund or asset in existence which is being transferred, but all that is involved is a debt payable in certain contingencies, some of them being death. It is also urged that the legislation dealing with the issuance of insurance specifically recognizes and authorizes optional modes of settlement of life insurance policies; that, therefore, the Legislature has made it clear that either the supplementary contracts are parts of the original insurance contracts, or that if they are not so considered, the intention is that they need not conform as to execution to the requirements of the Statute of Wills.

The wife's executors urge that upon the death of the father the policy fully matured, and a fund came into existence. The optional settlement was nothing less than a new and independent contract made between the insurance company and the policy beneficiary. This would be so, they argue, even if the supplementary contract did not vary from the option terms of the policy, but the variation confirms that the transaction is the making of an independent contract. They also argue that any variance in the supplementary contract from the policy makes the new agreement an independent contract. They also argue that under no construction can the supplementary contract be deemed related to insurance, because it insures nothing; it is simply a contract for the deposit of a fund, fully in existence, upon which interest is to be paid. Being neither a contract nor part of a contract of insurance, the gift over is claimed invalid as an attempt to effect a testamentary disposition without conforming to the Statute of Wills.

The mere statement of the respective contentions of the parties reveals a battle of words and nominal distinctions stirred up by the issue. It may seem blunt and over-simple, but the fact is that a supplementary contract partakes both of an insurance contract and an independent contract for the deposit of a fund. It is fruitless and a vain concern to try to fit what is so obviously a transaction that bridges two categories of legal thinking, into one or the other, simply because the law and lawyers as a convenience to thinking, and to make possible communication between finite minds, have invented separate categories of thought and words to mark the separation.

It is obvious that the policy beneficiary has the right to a settlement option, only because that right was given by the policy. Nor could an insurance company grant such a contract independent of a policy. Moreover, we may take judicial notice that with changes in interest rates it is sometimes to the disadvantage of the insurance company to enter into the supplementary contract; but it loses its freedom by virtue of the insurance policy it had issued. On the other hand, it is equally true that once the insured had died, all the insurance aspects of the contract of insurance were fully terminated, at least in the actuarial and legal sense. The supplementary contract clearly provides for the continued holding, or deposit, of the fund now arisen, very much in the manner of a bank if the fund were given to the bank. But this provision obviously could not have arisen unless it were inchoate in the original insurance contract. From another aspect too, the deposit is related to the policy of insurance: there is no doubt that the insured in purchasing his policy and in paying his premiums was definitely buying optional modes of settlement. It is common knowledge that the methods of settlement are very frequently a very valuable part of the policy. That is particularly true these days, if the options arise from an older policy where the terms are likely to be more beneficial. In this case, the policy was issued in 1925.

Accordingly, it would seem the more sensible view to determine the question on the basis of whether we are dealing with a social evil or hazard or a social good, and to be controlled in that view by legislative intention, if it has been expressed or may be implied.

As far back as in 1906, the New York Legislature, following the noted Armstrong investigation, for which the later Chief Justice of the United States, CHARLES EVANS HUGHES, was counsel, provided for optional modes of settlement on life insurance

policies, and specified that the policy beneficiary might stipulate for gift over on his death (L. 1906, ch. 326, § 101). It seems inconceivable that the Legislature should authorize such disposition in the event of death, intending all the time that the disposition shall be invalid unless the Statute of Wills is followed, although all the statute referred to is the exchange of notices between insurance company and policy beneficiary. Current statutes continue to relate to optional modes of settlement, although not in the specific terms of the 1906 statutes (Insurance Law, § 46, subd. 1; § 145, subd. 2; Personal Property Law, § 15, subd. 1). Later, we shall advert to the action of the Legislature in 1952, an action directly flowing from the previous holding in this case.

The courts have many times passed upon and considered supplementary contracts. Very recently, the Court of Appeals considered the nature and character of the supplemental or supplementary contract (*Gram* v. *Mutual Life Ins. Co. of N. Y.*, 300 N. Y. 375). Judge CONWAY, writing on behalf of the court, referred to a number of well-settled rules and cited a large number of applicable cases, concerning optional modes of settlement (p. 382 *et seq*). Said he: '' The distinction between a supplemental or supplementary contract and a new contract of insurance is of prime importance in the case at bar. Under a supplemental contract the rights and duties of the parties flow from the original contract, whereas under a new contract they flow from the new agreement.'' (P. 384.)

True it is that the court went on to find that unless an optional mode of settlement is selected by the insured or policy beneficiary in terms offered, the company is not bound. For that reason, the wife's estate in this case relies heavily on the *Gram* case as authority. But in that case the company had not accepted the suggested modification offered by the insured. In the instant case, the supplementary contract was fully executed and accepted by both parties, the insurance company and the policy beneficiary. The trivial variance, whether the interest payments were to be made annually or quarterly and with respect to the right to withdraw principal, did not change the contract from being supplemental to the original policy of insurance. Again we are faced with the need not to confuse the word with the meaning of the word. For the purpose of binding the insurance company *without other action by the insurance company,* insured or policy beneficiary must accept the option in the unvarying terms offered in the policy. The slightest variance

may avoid the company's liability — so the court held in the *Gram* case. That is fundamental law of contract. A qualified acceptance is simply a counter offer. That does not mean, and cannot possibly mean, that as to third parties, any variation in the executed supplementary contract from the terms of the policy constitutes a new contract, and not one derived from the policy. To so hold would mean that the principles and realities applied to modifications of contracts are not to be applied to contracts of life insurance.

In *Mutual Ben. Life Ins. Co. v. Ellis* (125 F. 2d 127, certiorari denied, 316 U. S. 665) a somewhat different view was taken. There, the change in the settlement contract from the policy options was more substantial than here. The policy allowed options A, B and C. The certificate issued to the policy beneficiary in effect granted option A, with a right during the lifetime of the policy beneficiary to elect the benefits of either option B or C. The court, AUGUSTUS N. HAND, C. J., writing, held that the policy beneficiary had not selected one of the policy options, but a combination of them, and therefore had made a new agreement with the insurance company. The gift over on the death of the payee, however, was not held invalid, but enforced on the theory that it was a contract right, not a testamentary disposition of property, and that, therefore, the donee-beneficiaries could sue. Perhaps the most significant thing about the case is that the beneficiaries were permitted to recover, and the usefulness of supplementary contracts (by whatever name) was not impaired.

It does not merit extended discussion to prove the very high public interest in the extension of the life insurance system, as a major provision for thrift and security for individuals and families. Mutualization of insurance companies, beneficial tax provisions and tax exemptions, government life insurance for members of the armed services, savings bank life insurance, and the close attention paid to insurance matters by the Legislature, all devoted to its greater use and the finding of additional uses and outlets for its development, are pointed evidence of its significance, in modern and especially American, society. Part and parcel of this system for many decades, is the optional mode of settlement, with power to make gift over of the unused principal. This is no evil to be hobbled; no course of conduct with incidence of recurring injustice to be limited by safeguards, slowing but necessary.

Finally, the Legislature in 1952, in reaction to the very holding at Special Term in this case, spoke, and made clear that the supplementary contract, with gift over in the event of death, requires no protection from the statutes regulating the execution of testamentary dispositions. Chapter 820 of the Laws of 1952 was adopted. It enacted section 24-a of the Personal Property Law. That section provides that the supplementary contract, even if it provide for gift over in the event of death, is not subject to the statutes governing the transfer of property by will or gift or on intestacy. Section 2 of chapter 820 provides: '' The enactment of this act shall not create any implication of invalidity as to any contract or designation, of the nature herein described, made by any person who dies before the effective date of this act.'' This, together with the note of the Law Revision Commission, which sponsored the enactment, makes it clear that it was passed to clear away uncertainty, and suggests that it was not for the purpose of changing the law (N. Y. Legis. Doc., 1952, No. 65 G).

The Legislature has made the gift over in the supplementary contract valid for the future, without any question. That is proof positive that as a matter of policy it is a good, and not an evil. We have argued that unless it were evil as a matter of policy the gift over should be and indeed must be sustained as valid. Should the courts hold, as Special Term did, that the gifts over of the past are invalid, then even the Legislature cannot reach and correct that infirmity, since property rights are affected.

If a court were authorized to guess rather than to rule on the facts before it, one might surmise that the deceased wife would not have intended that her former husband should continue to benefit from the supplementary contract. But even of that guess we cannot be too sure, since she could, at the time that she made the supplementary contract, have reserved the right to change the supplementary beneficiary, but she did not do so. Moreover, all through the short period from her divorce until her death she had the right to withdraw the principal, which would have diverted the fund from the former husband, but she did not do so. Perhaps it is just as well that we do not rely on the guess as distinguished from the fact for which there is evidence.

Regardless, however, of what the deceased wife's intentions might have been as between her divorced husband of twelve years' standing and the father of her son, and the husband

of several months' standing, we are controlled by what she did and what she failed to do.

The supplementary contract is a valid extension of the policy of insurance providing for the continued deposit of the fund for the purpose of paying interest thereon, and the gift over on the death of the policy beneficiary is not subject to the statutes governing the making of testamentary dispositions.

The judgment and order of Special Term should be reversed, and the motion for summary judgment by the impleaded defendants denied, and the motion for judgment on the pleadings and for summary judgment by plaintiff granted.

COHN, J. (dissenting). Under the terms of the policy the beneficiary, Barbara Corlies Graves, was entitled upon the death of the insured to the immediate payment of the proceeds of the policy in a lump sum. The policy also contained a provision under which the beneficiary could select any one of three specified modes of settlement.

The mode of settlement selected by Barbara Corlies Graves was at variance with the options contained in the policy. The defendant insurance company nevertheless issued its " Supplementary Contract " containing the terms requested by the beneficiary.

As the " Supplementary Contract " did not conform to the terms of any one of the policy options, it was not a continuation of the policy of insurance, but was a new agreement. (*Mutual Ben. Life Ins. Co.* v. *Ellis,* 125 F. 2d 127, 130, certiorari denied 316 U. S. 665; *Gram* v. *Mutual Life Ins. Co. of N. Y.,* 300 N. Y. 375, 382.) The disposition of the principal fund under the new contract was testamentary and, therefore, invalid under the Statute of Wills. Appellant, who is the ex-husband of Barbara Graves, accordingly is not entitled to the principal sum payable under the policy of insurance.

For the foregoing reason, the order and judgment should be affirmed.

PECK, P. J., GLENNON and DORE, JJ., concur; COHN, J., dissents and votes to affirm, in opinion.

Judgment and order of Special Term reversed, and the motion for summary judgment by the impleaded defendants denied, and the motion for judgment on the pleadings and for summary judgment by plaintiff granted. Settle order on notice.