Robert WILHOIT, Plaintiff-Appellee,

v.

PEOPLES LIFE INSURANCE COM-
PANY, Defendant-Appellee,
and

Thomas J. Owens, Defendant-
Appellant,
and

Lee C. Emmelman, Adm., etc.,
Intervenor-Appellant.

No. 11188.

United States Court of Appeals,
Seventh Circuit.

Feb. 2, 1955.

Joseph G. Wood, Indianapolis, Ind., Schortemeier, Eby & Wood, Indianap-

olis, Ind., of counsel, for appellant.

Earl Clay Ulen, Jr., Indianapolis, Ind., Robert K. Ryan, Frankfort, Ind., Joseph J. Daniels, Indianapolis, Ind., Baker & Daniels, Indianapolis, Ind., of counsel, for appellee.

Before MAJOR, LINDLEY and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

The plaintiff, Robert Wilhoit, instituted this action against the defendants, Peoples Life Insurance Company (sometimes referred to as the company) and Thomas J. Owens, for the recovery of money held by the company. Roley Oscar Wilhoit was the insured and Sarah Louise Wilhoit, his wife, the beneficiary in a life insurance policy in the amount of $5,000, issued by Century Life Insurance Company and later reinsured in Peoples Life Insurance Company of Frankfort, Indiana. Mr. Wilhoit died prior to October 22, 1930 (the exact date not disclosed by the record), without having changed the beneficiary designated in the policy, and the proceeds thereof became due and payable to Mrs. Wilhoit. The amount due was paid to her and the policy surrendered, as is evidenced by the following receipt appearing on the back of the policy:

"$4,749.00          Indianapolis, Ind.,
                         Oct. 22–1930.

Received from Century Life Insurance Company Forty Seven hundred forty nine Dollars in full for all claims under the within policy, terminated by death of Roley O. Wilhoit.

Sarah Louise Wilhoit."

The main body of the policy contained a provision entitled "The Investment," as follows:

"Upon the maturity of this policy, the amount payable hereunder, or any portion thereof, not less than One Thousand Dollars, may be left on deposit with the Company, and the Company will pay interest annually in advance upon the amount so left on deposit at such rate as the Company may declare on such funds so held by it, but never at a rate less than three per cent, so long as the amount shall remain on deposit with the Company. The said deposit may be withdrawn at the end of any interest year; or upon the death of the payee the amount of said deposit will be paid to the executors, administrators or assigns of said payee."

On November 14, 1930, Mrs. Wilhoit (twenty-three days after she had acknowledged receipt of the amount due her under the policy) from her home in Indiana signed and addressed a letter to the company in the same State, which in material parts reads as follows:

"I hereby acknowledge receipt of settlement in full under Policy No. C172 terminated by the death of Roley O. Wilhoit, the Insured, and I direct that the proceeds of $4,749.00 be held in trust by the Peoples Life Insurance Company under the following conditions:

"(1) Said amount or any part thereof (not less than $100.00) to be subject to withdrawal on demand of the undersigned.

"(2) While on deposit, said amount or part thereof shall earn interest at the rate of $3\frac{1}{2}\%$, compounded annually, plus any excess interest authorized by the Board of Directors of the Company. Interest may be withdrawn at the end of each six months period or whenever the principal of the fund is withdrawn or may be allowed to accumulate compounded annually. Interest on this trust fund shall begin as of October 9th, 1930.

"(3) In the event of my death, while any part of this trust fund is still in existence, the full amount, plus any accrued interest, shall be immediately payable to Robert G. Owens (Relationship) Brother."

The proposal contained in this letter was, on November 17, 1930, accepted by the company in the following form:

"The above agreement creating a trust fund is hereby accepted and we acknowledge receipt of the deposit of $4,749.00 under the above specified conditions."

Robert G. Owens, a brother of Mrs. Wilhoit and the person mentioned in her November 14 letter to the company, died January 23, 1932, and Mrs. Wilhoit died April 12, 1951, each leaving a last will and testament. The will of the former by a general clause devised all his property to Thomas J. Owens, a defendant, and was admitted to probate in Marion County, Indiana. The will of Mrs. Wilhoit was admitted to probate in Edgar County, Illinois, and contained the following provision:

"I now have the sum of Four Thousand Seven Hundred Forty Nine Dollars ($4,749.00), or approximately that amount, which is the proceeds of an insurance policy on the life of my deceased husband, Oscar Wilhoit, on deposit with the insurance company, the Peoples Life Insurance Company of Frankfort, Indiana. This I give and bequeath to Robert Wilhoit, now of Seattle, Washington, who is another son of my said stepson, the same to be his property absolutely. * * "

The fund in controversy, deposited with the company by Mrs. Wilhoit on November 17, 1930, remained with the company continuously until the date of her death, April 12, 1951. The company refused to recognize the claim to the fund made by the executor of her estate. Thereupon, the executor assigned his interest to Robert Wilhoit, the legatee named in the will of Mrs. Wilhoit and the plaintiff in the instant action. On petition, the Probate Court of Marion County, Indiana, on June 2, 1953, entered an order reopening the estate of Robert G. Owens, appointed Lee C. Emmelman administrator de bonis non with the will annexed and authorized him to petition for leave to intervene in the instant action. Such intervention was allowed on July 3, 1953. The intervenor joined Thomas J. Owens as a counter-claimant. The former claimed the fund as administrator de bonis non of the estate of Robert G. Owens, while the latter claimed the fund as the legatee under the will of Robert G. Owens. There is no controversy between the intervenor and Thomas J. Owens. They are both represented by the same counsel, and it is conceded that if the defendants prevail the fund should be payable to the intervenor.

The company, after the institution of the action, paid the fund into court by interpleader and is no longer an active party to the litigation. The parties on both sides filed motions for a summary judgment. There was no dispute as to the facts and no question but that the situation was such that the issue in controversy could properly be disposed of in that manner. The District Court, on March 11, 1954, without opinion sustained the motion of the plaintiff for summary judgment and at the same time denied the motion of the defendant, Thomas J. Owens, and the intervenor, Emmelman. Thereupon, judgment was entered in favor of the plaintiff in the sum of $4,749.00, together with interest and costs. From this judgment the defendant, Thomas J. Owens, and the intervenor, Emmelman, appeal.

Defendants (this includes the intervenor-appellant) advance two theories in support of their argument for reversal, both of which are firmly grounded upon the premise that the agreement of November 17, 1930, between Mrs. Wilhoit and the company, was an insurance contract or a contract supplemental thereto. Thus premised, they argue (1) that the rights of the parties must be determined by the law of insurance and not by the statute of wills, and (2) that Mrs. Wilhoit as a primary beneficiary named Robert G. Owens as the successor beneficiary irrevocably, without right to revoke or change and without a "pre-decease of beneficiary" provision, and that as a result the rights of such successor beneficiary upon his death prior to the death of the primary beneficiary did not lapse but passed on

to the heirs and assigns of such successor beneficiary.

On the other hand, plaintiff argues, in support of the judgment, that the disposition of the fund is not controlled by the law of insurance because the agreement between Mrs. Wilhoit and the company was not an insurance contract or a supplement thereto but was nothing more than a contract of deposit, and that the provision in the agreement by which Robert G. Owens was to take the funds in the event of her death was an invalid testamentary disposition. Further, it is argued that in any event any interest acquired by Robert G. Owens was extinguished upon his death, which occurred prior to that of Mrs. Wilhoit.

Defendants cite many cases from numerous jurisdictions which have held under a variety of circumstances that the proceeds of a life insurance policy are to be disposed of in accordance with its provisions, and that a beneficiary, if authorized by the policy, may designate a successor beneficiary to take on the death of the primary beneficiary. We cite without comment, for reasons subsequently stated, some of the more important cases relied upon by the defendants. Toulouse v. New York Life Ins. Co., 40 Wash.2d 538, 245 P.2d 205; Latterman v. Guardian Life Ins. Co. of America, 280 N.Y. 102, 19 N.E.2d 978, 127 A.L.R. 450; Kansas City Life Ins. Co. v. Rainey, 353 Mo. 477, 182 S.W.2d 624, 155 A.L.R. 168; New England Mut. Life Ins. Co. v. Harvey, D.C., 82 F.Supp. 702, and Hall v. Mutual Life Ins. Co. of New York, 282 App.Div. 203, 122 N.Y.S.2d 239.

Other cases are cited, some from Indiana, to the effect that the beneficiary designated in a life insurance policy acquires a vested interest therein. However, these cases as well as those cited above are based upon the premise that the agreement under discussion was either an insurance contract or a supplemental agreement characterized as such because a successor beneficiary had been designated by the primary beneficiary under authority contained in the policy.

■ Obviously, defendants' contention is without merit and the cases cited in support thereof are without application unless we accept the premise upon which the contention is made, that is, that the agreement between Mrs. Wilhoit and the company was an insurance contract or an agreement supplemental thereto. While there may be room for differences of opinion, we have reached the conclusion that the premise is not sound, that the arrangement between the parties was the result of a separate and independent agreement, unrelated to the terms of the policy. There are two cases which support this conclusion. Mutual Ben. Life Ins. Co. v. Ellis, 2 Cir., 125 F.2d 127, 130, 138 A.L.R. 1478, certiorari denied Eisenlord v. Ellis, 316 U.S. 665, 62 S.Ct. 945, 86 L.Ed. 1741, and Gram v. Mutual Life Ins. Co. of New York, 300 N.Y. 375, 91 N.E.2d 307.

The "investment" provision was an offer by the company by which Mrs. Wilhoit, on maturity of the policy, could have left the proceeds with the company on the terms and conditions therein stated. It is plain, however, that she did not take advantage of this offer. Instead, she accepted the proceeds, surrendered the policy and receipted the company in full "for all claims under the within policy," and presumably the proceeds were paid to her at that time. At any rate, it was not until twenty-three days later that she, by letter, made her own proposal to the company, which differed materially from that contained in the policy. The company proposed to pay interest annually in advance on the amount left on deposit, at a rate of interest not less than 3%. Her proposal provided for interest at the rate of 3½%, compounded annually, with a right to withdraw interest at the end of any six-month period. The company proposal provided that Mrs. Wilhoit could withdraw the deposit only at the end of any interest year, it made no provision for the withdrawal of any amount less than the total on deposit, while the offer of Mrs. Wilhoit pro-

vided for the right to withdraw, on demand, any amount or part thereof (not less than $100). Undoubtedly the company was obligated, upon request by Mrs. Wilhoit, to comply with the terms of the investment provision and, upon refusal, could have been forced by her to do so. On the other hand, it was under no obligation to accept the proposal made by her and, upon its refusal, she would have been without remedy.

Having concluded that the agreement between Mrs. Wilhoit and the company was neither an insurance contract nor an agreement supplemental thereto, we might dispose of the case without further discussion; however, we think other cases upon which defendants rely should be considered. In Mutual Ben. Life Ins. Co. v. Ellis, 2 Cir., 125 F.2d 127, 138 A.L.R. 1478, the court held, under circumstances similar to those here, that the agreement in dispute was not an insurance contract or an agreement supplemental thereto because the beneficiary had not accepted any of the options provided for in the policy but instead made a proposal of her own which was accepted by the company. There, the insured, Mrs. Addie, made an agreement with the insurance company by which the proceeds remained with it, with the right to receive interest and to withdraw the funds on three months' notice. She directed the company to pay the fund to her three sisters-in-law upon her death. When Mrs. Addie died, conflicting claims to the fund were made by her administrator and the sisters-in-law. Notwithstanding that the court had held that the agreement between Mrs. Addie and the insurance company was separate and independent, it sustained the right of the sisters-in-law to the fund on the theory that they were third party donee beneficiaries under the contract. That case is distinguishable from the instant case in several respects. The court there appears to have emphasized the fact that Mrs. Addie could only withdraw the fund on three months' notice, while here it could be with-

drawn upon demand. There, the court was applying what it found to be the rule of the State of Colorado, with which we are not here concerned. The so-called donee beneficiaries in that case were living at the death of Mrs. Addie, while here the death of Robert G. Owens occurred some nineteen years before that of Mrs. Wilhoit. In any event, we are not impressed with the reasoning by which the result was reached in that case.

The agreement in controversy having been executed in Indiana, the rule as announced by the courts of that State must govern; however, diligent search fails to reveal a case exactly in point. Defendants cite Society of Missionary Catechists of Our Blessed Lady of Victory v. Bradley, 112 Ind.App. 556, 44 N.E.2d 209; Indiana National Life Ins. Co. v. McGinnis, 180 Ind. 9, 101 N.E. 289, 45 L.R.A.,N.S., 192; McKinney v. Depoy, 213 Ind. 361, 12 N.E.2d 250, and Penn Mut. Life Ins. Co. of Philadelphia v. Norcross, 163 Ind. 379, 72 N.E. 132. All of these cases, however, except the Bradley case, hold nothing more than that the beneficiary in a life insurance contract acquires a vested interest or a defeasible vested interest. In the Bradley case, a Miss McNamara entered into an agreement with the Society, under which she paid over to it a certain sum of money upon which she was to receive interest as long as she lived, with the proviso that she could withdraw the principal upon sixty days' notice. The agreement also provided that anything left at her death was to remain and become the absolute property of the Society. The court held that upon her death the money on deposit belonged to the Society and that it was not a testamentary disposition. The reasoning of the court appears to be that title to the money passed to the Society at the time of the execution of the contract and that at that time the Society became vested with an interest. In contrast, defendants in the instant case claim through Robert G. Owens who, in our judgment, never

acquired title, ownership or interest in the deposited money.

In our view, the instant situation comes within the ambit of those cases which have held that a gift is ineffective unless delivery of the property is made during the lifetime of the donor. In Teague v. Abbot, 51 Ind.App. 604, 610, 100 N.E. 27, 29, the court stated:

> "The main distinction between gifts *inter vivos* and gifts *causa mortis* is found in the fact that the former requires an unconditional delivery in the lifetime of the donor, and the latter the same, subject only to the one condition that the survival of the donor defeats the gift. The question of delivery is therefore essentially the same in each instance."

In Cunningham v. Teague, 105 Ind.App. 46, 50, 11 N.E.2d 525, 527, the court stated:

> " * * * the gift must be fully executed by a delivery of the property by the donor to the donee, or to some third person for the use and benefit of the donee. It must appear that the donor intentionally parted with control over the property given in order that the donee should receive it, to constitute delivery."

In First & Tri-State Nat. Bank & Trust Co. v. Caywood, 95 Ind.App. 591, 176 N.E. 871, one Parrish deposited $1,000 in the bank, for which the latter issued its certificate of deposit payable to Parrish or Caywood. Parrish attempted to assign his interest to Caywood, effective on the death of Parrish. The executor of Parrish's estate endorsed the certificate of deposit on which he received from the bank the proceeds. Caywood made a claim against the estate of Parrish, relying upon the attempted assignment. The trial court held in favor of Caywood but the appellate court reversed. In doing so, it stated, 176 N.E. at page 873:

> "Having given every consideration to the testimony, we are of the opinion, and the facts strongly indicate and tend to show, that decedent Parrish attempted to make a gift of $1,000 to appellee, same to take effect at his death. It is clear and undisputed that appellee's interest in the deposit was to be postponed until the death of the depositor. There was no gift or trust, but merely an attempt to do that in the future which can only be done by will."

In Basket v. Hassell, 107 U.S. 602, on page 614, 2 S.Ct. 415, on page 422, 27 L.Ed. 500, the court had before it a similar factual situation. The court stated:

> " * * * a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation, according to its terms, will not suffice. A delivery, in terms, which confers upon the donee power to control the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift."

Irrespective of whether the agreement in the instant case be characterized as an assignment, a contract for the benefit of a third party or an attempted gift *causa mortis*, no reason is discernible why any different rule of law should be applied. Mrs. Wilhoit deposited her money with the company, which obligated itself to pay interest and return the principal to her on demand. Only "in the event of her death" was the deposit, if it still remained, payable to Robert G. Owens. If Mrs. Wilhoit had deposited her money with a bank rather than with the insurance company under the same form of agreement, we think that it would have constituted an ineffectual disposition because of failure to comply with the Indiana statute of wills.

In conclusion, we think it not immaterial to take into consideration what appears to have been the intention of the parties. Gurnett v. Mutual Life

Ins. Co. of New York, 356 Ill. 612, 621, 191 N.E. 250; McCarthy v. Pieret, 281 N.Y. 407, 24 N.E.2d 102; Toulouse v. New York Life Ins. Co., 40 Wash.2d 538, 245 P.2d 205, 206. As already shown, Robert G. Owens, through whom defendants claim, died in 1932, and in his will made no mention of the funds in controversy. After the death of Mrs. Wilhoit almost twenty years later, the estate of Robert G. Owens was reopened for the express purpose of making claim to the fund. On the other hand, Mrs. Wilhoit in her will specifically devised the fund in controversy to plaintiff, Robert Wilhoit. It thus appears plain that Mrs. Wilhoit did not intend that the fund go to the successors of Robert G. Owens but that after his death she thought she had a right to dispose of the fund as she saw fit, as is evidenced by the specific bequest contained in her will. We recognize that the intention of the parties or the belief which they entertained relative to the fund is not controlling, but under the circumstances presented, we think it is entitled to some consideration.

The judgment of the District Court is Affirmed.