Phil L. ZIMMERMANN, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 15638.

United States Court of Appeals
Eighth Circuit.

Feb. 4, 1957.

Rehearing Denied Feb. 26, 1957.

Bertram W. Tremayne, Jr., St. Louis, Mo. (Ralph R. Neuhoff, Edwin M. Schaefer, Ralph R. Neuhoff, Jr., and Neuhoff, Tremayne & Schaefer, St. Louis, Mo., were with him on the brief), for petitioner.

Arthur I. Gould, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before GARDNER, Chief Judge, and VAN OOSTERHOUT and WHITTAKER, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer, Zimmermann, has petitioned this court to review the decision of the Tax Court, reported at 25 T.C. 233, determining that taxpayer realized $2,955.03 in taxable income in 1951 through the receipt of proceeds from two contracts issued by Massachusetts Mutual Life Insurance Company, hereinafter called insurance company. Taxpayer received from the insurance company in 1951 $3,000 under Option A, hereinafter described. Interest upon the unpaid balance of the proceeds of the two contracts was credited to the taxpayer for the year 1951 in the amount of $2,955.03. The issue for decision is whether the $3,000 received by the taxpayer in 1951 was an amount received "under a life insurance or endowment contract" within the meaning of section 22(b) (2) (A) of the Internal Revenue Code, as amend-

ed, 26 U.S.C.A. § 22(b) (2) (A), which provides:

"§ 22. Gross income

\* \* \* \* \* \*

"(b) *Exclusions from Gross Income.* The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \*

"(A) *In general.* Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. \* \* \*"

The $3,000 was not paid by reason of the death of the insured. The parties and the Tax Court agree that the payment in controversy is not an annuity. See Thornley, 2 T.C. 220. It is likewise agreed that the $3,000 received by the taxpayer in 1951, when added to the amounts previously received by him under the policies or contracts, does not exceed the premiums or consideration paid by the taxpayer to the insurance company.

We now look to the record to determine whether the Tax Court's decision, that $2,955.03 of the $3,000 received by the taxpayer from the insurance company in 1951 was taxable income, is clearly erroneous.

■ The facts are stipulated. Taxpayer in 1924 purchased from the insurance company Policy No. 669410, for a single premium of $49,999.86. This policy bears upon its face the words "Single Premium Endowment Policy." By said policy, the insurance company agreed to pay $55,331 on September 30, 1929, to the insured if living, or, in event of the prior death of the insured, to pay said principal sum immediately upon the insured's death to his beneficiary. The Tax Court properly found this policy to be a typical endowment contract.

Appleman, Insurance Law and Practice, Vol. 1, section 4, page 11, defines an endowment policy as follows:

"An endowment contract is a policy which agrees to pay to the insured, if living at the expiration of a certain period, a specified amount of money; and in the event of his death in the interim, agrees to pay the face amount of the policy to a designated beneficiary."

Substantially the same definition appears in Carr v. Hamilton, 129 U.S. 252, 9 S.Ct. 295, 32 L.Ed. 669. Policy No. 669410 fully meets all the requirements of an endowment contract.

In 1927 taxpayer purchased from the insurance company Policy No. 790720, a single premium deferred annuity policy, for a consideration of $10,000. It provided for an annuity of $674.60 per month for life or for ten years certain, beginning April 19, 1969, provided taxpayer be living on that date; or the taxpayer if then living could, in lieu of the annuity, receive $70,160 in a lump sum. In the event the taxpayer died before 1969, the only recovery on the policy was the return of the premium paid without interest.

■ The Tax Court held the policy last described was neither a life insurance nor an endowment contract. We agree. The contract does not fall within the definition of an endowment policy, heretofore set out, nor does it conform to any recognized definition of life insurance. In Helvering v. LeGierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996, an insurance exemption under federal estate tax statutes was involved. The exemption was claimed upon a life insurance policy and an annuity policy simultaneously issued to an aged person. The exemption was denied. The Court, in discussing what constitutes a life insur-

ance contract, states, 312 U.S. at page 539, 61 S.Ct. at page 649:

> " * * * Historically and commonly insurance involves risk-shifting and risk-distributing. That life insurance is desirable from an economic and social standpoint as a device to shift and distribute risk of loss from premature death is unquestionable. That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. * * * "

The Court distinguishes between insurance and annuity contracts as follows, 312 U.S. at page 541, 61 S.Ct. at page 650:

> " * * * The fact remains that annuity and insurance are opposites; in this combination the one neutralizes the risk customarily inherent in the other. From the company's viewpoint, insurance looks to longevity, annuity to transciency. * * * "

With reference to the possibility that annuity payments might exceed the consideration paid and earnings thereon, the Court states, 312 U.S. at page 542, 61 S.Ct. at page 650:

> " * * * Any risk that the prepayment would earn less than the amount paid to respondent as an annuity was an investment risk similar to the risk assumed by a bank; it was not an insurance risk as explained above. * * * "

In our present case we are convinced the insurance company assumed no insurance risk on Policy No. 790720. The contract contains no specific statement that any life insurance is afforded. No principal sum of insurance is mentioned. The only obligation assumed by the insurance company in the event of the death of the policyholder prior to the time the annuity is to commence is to refund the premiums paid without interest.

Each of the contracts heretofore described provides that the insured may elect, with right of revocation, to have the proceeds upon maturity or the cash surrender value at any time paid under any one of four options. Option A provides for "equal installments, each of such an amount as may be elected, to continue until the proceeds, together with the interest herein specified, are exhausted; provided, that the final installment shall be for the balance only of said proceeds and specified interest. On each anniversary of the first installment interest at not less than three per cent per annum will be added to the unpaid balance of said proceeds." Option B provides for equal periodical payments for a fixed period of time, Option C provides for payment of an annuity for life, and Option D provides for leaving the funds with the insurance company at such rate of interest, not less than three per cent per annum, as may be determined by the directors.

In 1925, taxpayer elected, with right of revocation, to have the cash surrender value of Policy No. 669410, in the amount of $51,065.53, paid to him under Option A in annual installments of $1. In 1931, taxpayer elected, with right of revocation, to have the cash surrender value of Policy No. 790720, in the amount of $11,913.11, paid to him under Option A in annual installments of $1. On May 29, 1933, the proceeds of the two policies here involved were combined by agreement of the taxpayer and the insurance company, and the taxpayer elected to have the combined balance of $87,389.93 paid him in monthly installments of $337.36 under Option A. Ever since 1933 the proceeds of the two policies have been consolidated in a single account. There is nothing in the record to indicate the interest credit allocable to each policy, or the amount of withdrawals charged to each policy.

Taxpayer, pursuant to the rights granted him by the original policies, has from time to time changed his election as to payments to be made. The election in effect during 1951 was made on May 28, 1940, as of which date taxpayer elected to be paid annual installments of $3,-

000 under Option A. The stipulated status of the combined account for the 1940 to 1951 period is shown in a footnote.[1] In some years the interest credit

| 1. At end of Anniversary Date of | Withdrawals | Interest Credits | Balance |
|---|---|---|---|
| 5-28-40 | | | $100,000.00 |
| 5-28-40 | $ 3,000.00 | .......... | 97,000.00 |
| 5-28-41 | 3,000.00 | $ 3,492.00 | 97,492.00 |
| 5-28-42 | 3,000.00 | 3,412.22 | 97,904.22 |
| 5-28-43 | 3,000.00 | 3,181.89 | 98,086.11 |
| 5-28-44 | 3,000.00 | 3,187.80 | 98,273.91 |
| 5-28-45 | 3,000.00 | 3,193.90 | 98,467.81 |
| 5-28-46 | 3,000.00 | 3,200.20 | 98,668.01 |
| 5-28-47 | 3,000.00 | 2,960.04 | 98,628.05 |
| 5-28-48 | 3,000.00 | 2,958.84 | 98,586.89 |
| 5-28-49 | 3,000.00 | 2,957.61 | 98,544.50 |
| 5-28-50 | 3,000.00 | 2,956.34 | 98,500.84 |
| 5-28-51 | 3,000.00 | 2,955.03 | 98,455.87 |
| | $36,000.00 | $34,455.87 | |

exceeded the $3,000 withdrawal. However, in 1951, the withdrawal exceeded the credit by $44.97, and the principal balance of the combined account was reduced to that extent.

■ The Commissioner argues that any endowment or life insurance policy that might have existed terminated when taxpayer elected to have the cash surrender value of the policies returned to him under the options provided in the policies.

It is entirely true that after the surrender of the endowment policy the insurance company's obligation was limited to paying the cash surrender value under the policy options, and the insurance company was no longer under an obligation to pay the principal sum named in the endowment policy. The Commissioner's argument could be made equally well as to matured endowment contracts. Such an interpretation would render meaningless the statutory exemption of amounts received under an endowment contract. The substantial sums due under such a policy would not ordinarily be forthcoming until the policy matured or the insured elected to take the cash surrender value. A similar argument was rejected by the Tax Court in Thornley, supra. There, petitioner surrendered endowment policies prior to maturity and elected to receive the surrender value in equal installments over a period of years. The Tax Court held such installments exempt from tax as amounts received under endowment policies. In rejecting the Commissioner's contention there made, that the insured constructively received proceeds at the time of surrender of the policies for their cash value and reinvested such proceeds to purchase an annuity, the Tax Court stated, 2 T.C. at pages 232, 233:

"* * * The form of the transactions is of vital importance in determining the intention of the parties to the transactions. In the first place, upon the surrender of the policies, the proceeds thereof became due and payable to petitioner. He was entitled to have the proceeds paid to him then in cash in one sum. He elected to leave the principal sums due to him with the companies, and he elected to accept payment thereof in installments. In the event of his death, he designated the persons who are to receive the installments. The principal sums are due petitioner although they are payable only in the manner agreed upon, and petitioner has a property interest in the principal sums, the proceeds of the policies. The situation resem-

bles leaving money on deposit with the companies, at interest, with an agreement to accept payment in installments. The situation is like an account receivable. * * *"

"* * * Respondent erred in treating the transactions as purchases of annuities, and the installment payments as 'amounts received as an annuity.' We point out, also, that it is our understanding that petitioner could not have taken the proceeds of the policies and purchased any contracts under which installments would be paid for a fixed term without reference to the continuation of a life or lives. It is not the general practice of insurance companies to sell such contracts. The agreements which were executed by the companies and the petitioner are written only upon the surrender of policies of insurance and are not to be confused with annuity contracts which some insurance companies do write. * * *"

In Hall v. Mutual Life Insurance Company of New York, 282 App.Div. 203, 122 N.Y.S.2d 239, at page 243, the court, in rejecting a contention that the supplementary contract was not related to insurance because it risked nothing, states:

"It is obvious that the policy beneficiary has the right to a settlement option, only because that right was given by the policy. Nor could an insurance company grant such a contract independent of a policy. Moreover, we may take judicial notice that with changes in interest rates it is sometimes to the disadvantage of the insurance company to enter into the supplementary contract; but it loses its freedom by virtue of the insurance policy it had issued. On the other hand, it is equally true that once the insured had died, all the insurance aspects of the contract of insurance were fully terminated, at least in the actuarial and legal sense. The supplementary contract clearly provides for the continued holding, or depos-

it, of the fund now arisen, very much in the manner of a bank if the fund were given to the bank. But this provision obviously could not have arisen unless it were inchoate in the original insurance contract. From another aspect too, the deposit is related to the policy of insurance: there is no doubt that the insured in purchasing his policy and in paying his premiums was definitely buying optional modes of settlement. It is common knowledge that the methods of settlement are very frequently a very valuable part of the policy. That is particularly true these days, if the options arise from an older policy where the terms are likely to be more beneficial."

In our present case all the options exercised by the taxpayer were rights specifically granted him by the original policies. Such options were available to the taxpayer only because of the provisions of the original policies. Accordingly, we are convinced that the moneys received by the taxpayer under the option in force in 1951 were amounts received by virtue of the original policies. Such policies specifically provided that the optional benefits are available as to the cash surrender value of the policies.

The Commissioner in his brief states that taxpayer's situation is covered by that portion of I.T. 3202, 1938–2 Cum. Bull. 138, 139, reading as follows:

"Where, however, the proceeds of such a policy are left with the company under an agreement which provides for the payment of a fixed sum *equal to or less than the interest and earnings* on such proceeds, and the interest and earnings are subject to withdrawal without restriction, the contract should not be treated as an annuity contract within the contemplation of section 22(b)(2) of the Revenue Act of 1936. In such cases the amounts actually paid or credited to the policyholder should be returned for income tax purposes by the policyholder as ordinary income,

notwithstanding the amounts credited are not withdrawn in full." (Emphasis supplied.)

All parties agree that, if the interest credited for the taxable year equals or exceeds the fixed sum withdrawn, the amount actually paid or credited the taxpayer should be returned as income. See Igleheart v. Commissioner, 7 Cir., 174 F. 2d 605; United States v. Heilbroner, 2 Cir., 100 F.2d 379; Strauss, 21 T.C. 104.

The Commissioner contends that for the 1940 to 1951 period the total interest exceeded the total fixed payment withdrawals. Footnote 1 shows this to be true. This, however, has no bearing upon the taxability of the amounts received in 1951. Taxes are determined upon an annual basis. We are here concerned only with the taxes for the year 1951, and during that year the fixed payment exceeded the interest credited by $44.97. If the proceeds of both of the policies involved in this case were entitled to the section 22(b) (2) (A) exemption, the $3,000 payment would be exempt since the 1951 installment payment exceeded the 1951 interest credited. While the amount of principal withdrawn in 1951 is relatively small, nevertheless the principal balance was diminished. There is nothing in the statute or regulations which specifies the extent of the principal depletion required to make the exemption available. The test appears to be whether the withdrawal exceeds the interest credited. Any other test, in the absence of a statutory formula, would be extremely difficult to apply.

 We have heretofore determined that the proceeds of Policy No. 669410 are exempt from taxation as amounts received under an endowment contract, and that Policy No. 790720 is not an insurance or endowment contract, and hence amounts received thereunder are not exempt under section 22(b) (2) (A). As heretofore stated, the proceeds of the two policies were by agreement combined in one account. Is it possible to say under the record before us how much of the $3,000 annual payment comes out of the proceeds of each of the policies? We think not. Under the policy options the entire $3,000 or any part thereof could have been withdrawn from either policy. There is nothing in any of the policies or supplemental agreements stating the amount to be charged against the proceeds of either policy, nor is there any agreement to the effect that the withdrawals are to be proportionate.

The interest credited to the combined account in 1951 in the amount of $2,955.03 is taxable under the broad sweep of section 22(a) of the Internal Revenue Code, unless the taxpayer has established that the $3,000 received in 1951 from the insurance company was exempt under section 22(b) (2) (A) as amounts received under life insurance or endowment contracts, and further establishes that a sum greater than the interest credited to the exempt policy has been withdrawn during the taxable year such as to cause a reduction in the principal of the withheld funds.

Tax exemptions do not turn upon general equitable considerations. Exemptions depend upon legislative grace and are to be strictly construed. Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; Omaha Public Power Corp. v. O'Malley, 8 Cir., 216 F.2d 764, 771.

The proceeds of Policy No. 790720 were not exempt. Any interest credited to such policy would not be exempt from tax. The taxpayer has failed to establish what part of the funds withdrawn in 1951 was withdrawn from Policy No. 669410 or the amount of interest credited to said policy. There is no evidence before us which compels a finding that the amount withdrawn from the funds created by Policy No. 669410 exceeded the interest credited to said policy. We are unable to say that the decision of the Tax Court is clearly erroneous.

The decision of the Tax Court is affirmed.